[Crim. No. 913. Department One.—June 23, 1903.]

THE PEOPLE, Respondent, v. A. J. LANDIS, Appellant.

CRIMINAL LAW—FORGERY OF NOTE—DISQUALIFICATION OF GRAND JURORS —ACTUAL BIAS—OPINION FORMED FROM EVIDENCE IN CIVIL CASE.— That which will disqualify a petit juror will disqualify a grand juror from taking part in the finding of an indictment. Grand jurors who were actually biased against a defendant charged with the forgery of a note, and had formed opinions of his guilt, based on evidence heard by them in a civil action on the note, are disqualified from finding an indictment against him.

ID.—COMMON-LAW RULE—STATUTORY EXCEPTIONS NOT TO BE EXTENDED. —The common-law rule that a juror is disqualified for actual bias, in having formed an opinion of the guilt or innocence of the accused, is subject only to the statutory exceptions contained in subdivision 6 of section 896 and section 1076 of the Penal Code. Those exceptions, being in derogation of the common law, cannot be extended beyond the case stated, where the opinion is ''founded upon public rumor, statements in public journals, or common notoriety.'' It is only in that case that the juror may be rendered competent, by proving to the satisfaction of the court that, notwithstanding such opinion, he can, and will, act impartially and fairly upon the matters to be submitted to him.

ID.—DEFENDANT NOT HELD TO ANSWER—SETTING ASIDE INDICTMENT.— Where the defendant was not held to answer before the finding of the indictment, and the disqualification of grand jurors is made to appear, his motion to set aside the indictment for such disqualification should be granted.

ID.—EVIDENCE—DECLARATIONS OF DECEASED PERSON—HEARSAY— PREJUDICIAL ERROR.—The declarations made by a deceased person against whose estate the note alleged to have been forged was presented, which were no part of the *res gestæ*, and were the mere rehearsal or narrative by witnesses of what the decedent had said in his lifetime about the defendant, not in his presence or hearing, are inadmissible hearsay, and their admission was error prejudicial to the defendant.

APPEAL from a judgment of the Superior Court of Butte County and from an order denying a new trial. John C. Gray, Judge, refusing to set aside indictment. E. E. Gaddis, Judge, presiding at trial.

The facts are stated in the opinion of the court.

Guy R. Kennedy, and Warren Sexton, for Appellant.

Tirey L. Ford, Attorney-General, and C. N. Post, Assistant Attorney-General, for Respondent.

VAN DYKE, J.—The appellant was tried and convicted upon an indictment for the crime of forgery in the superior court of Butte County, and from said judgment of conviction and from the order overruling his motion for a new trial prosecutes this appeal.

Among the errors assigned by the appellant, he contends that the court below erred in overruling his motion to set aside the indictment. The motion to set aside the indictment was based upon the ground of the disqualification of two of the grand jurors, Dawson and Sweetser, on account of actual bias. The alleged forgery consisted of a note purporting to have been made by A. Fuller to the defendant for the sum of fifteen thousand dollars, one year after date, and dated at Chico, Cal., June 25, 1897. Fuller died on October 18, 1897, in Chico, Butte County, and thereafter, on March 26, 1898, the defendant presented to the public administrator, who had charge of the estate of said Fuller, a claim upon the said estate, based upon the note in question. The claim was rejected, and the defendant commenced an action thereon. The court below sustained a demurrer to the complaint in said action, and from the judgment entered thereon an appeal was taken to this court and said judgment reversed. (*Landis* v. *Woodman,* 126 Cal. 454.) Thereafter, in December, 1900, the action on the claim involved in the said fifteen-thousand-dollar note was tried in the superior court of Butte County. During the pendency of that trial Sweetser and Dawson, who were subsequently members of the grand jury who found the indictment against the defendant, were in and about the court-room, and heard the testimony given on such trial in the civil action upon the promissory note in question. On the motion to set aside the indictment Mr. Sweetser was examined, and after stating that he was in the court-house a part of the time during the progress of the trial in the civil action, and heard some of the testimony and argument of the attorneys, was asked: "Did you form an opinion?—A. I did.—Q. And you formed an opinion from the testimony of the witnesses in the note case, and from the arguments of the attorneys in that case as to the merits of the case?—A. I think I did; yes,

sir.—Q. You had that opinion at the time you were sworn as a grand juror in this case, did you?—A. Well, I had n't heard anything to change it.—Q. Was that opinion favorable or unfavorable to this defendant?—A. Well, I suppose I will answer the same as the other witness—it was unfavorable.'' Again he was asked about the opinion he had formed from being present in the court-room during the trial of the note case and the argument of attorneys. ''Did you form an opinion that the signature to that note was a forgery?—A. I think I did.'' Again: ''In other words, you had the opinion that Dr. Landis had attempted to collect money from the estate of Alfred Fuller on a note that was bogus?—A. I could not very well help it from the evidence I heard.'' R. H. Dawson, another member of the grand jury that indicted the defendant, on being examined before the court on the motion to set aside the indictment, testified as follows: ''I, at the time I was sworn in as a grand juror, had an opinion as to the defendant's guilt or innocence, but this opinion was not fixed, and this opinion was founded, not on what I had heard or what I had read, but on my acquaintance with Alfred Fuller in his lifetime. I was acquainted with Alfred Fuller in his lifetime, and from my acquaintance with Alfred Fuller and my knowledge of him I had formed this opinion of the defendant's guilt or innocence, and it would require evidence to remove that opinion.—Q. Was that opinion favorable or unfavorable to Dr. Landis?—A. Unfavorable.'' The challenge to these jurymen was denied, and motion to set aside the indictment was refused, for the reason that on cross-examination on behalf of the people, and on questions propounded by the court, they severally stated that, notwithstanding they had formed an opinion as to the guilt of the defendant in the manner stated, they went into the jury-room and acted impartially and fairly upon the matters submitted to them. The provisions of the Penal Code in reference to the qualifications of jurors and the grounds of challenge are the same with respect both to grand jurors and trial jurors. Subdivision 6 of section 896, provides that a grand juror may be challenged on the ground of a state of mind existing on his part in reference to the case or party which would prevent him from acting impartially and without prejudice to the substantial rights of the party challenging him; but this

further provision is added: "But no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such juror, founded upon public rumor, statements in public journals, or common notoriety, provided it satisfactorily appear to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him." Section 1076 contains similar language in reference to a challenge to a trial juror as that already quoted from section 896 in reference to a grand juror. At common law a juror who entered the jury-room or box with an opinion as to the guilt or innocence of the accused was, *ipso facto,* disqualified from acting in the case; but to obviate the inconvenience resulting from disqualifying jurors in case their opinion was based upon public rumor, or statements in public journals, or common notoriety, the rule in that respect was changed so as to render the juror competent if it should appear satisfactorily to the court, upon his declaration under oath, that, notwithstanding the opinion so formed, he could fairly and impartially act upon the matter submitted to him; but this being in derogation of the common-law rule, it cannot be extended beyond the case stated—to wit, where the opinion was "founded upon public rumor, statements in public journals, or common notoriety." As said in *Lombardi* v. *California-Street Ry. Co.,* 124 Cal. 318, "This is the only important statutory exception to the common-law rule excluding jurors upon the ground of actual bias, and was enacted because of the apparent necessity." (See, also, *People* v. *Wells,* 100 Cal. 227; *People* v. *Flannelly,* 128 Cal. 83.) In this case Dawson and Sweetser, members of the grand jury who found the indictment against the defendant, did not form their opinion upon public rumor, or statements in public journals, or common notoriety, but upon knowledge obtained otherwise, and they were disqualified on the ground of actual bias, and could not qualify themselves so as to become competent by any answers on cross-examination, or in response to the questions by the court, as provided in the code in case of an opinion founded upon public rumor, or statements in public journals, or common notoriety. By section 995 of the Penal Code it is provided that the indictment must be set aside by the

court in which the defendant is arraigned, when he had not
been held to answer before the finding of the indictment,
upon his motion upon any ground which would have been good
ground for challenge, either to the panel or to an individual
grand juror. In this case the defendant had not been held
to answer before the finding of the indictment, and two of the
members of the grand jury being disqualified, as shown, his
motion to set aside the indictment should have been granted.

Another assignment of error on the part of the appellant
is the admission in evidence against his objections, of declar-
ations and statements of the deceased, Alfred Fuller, in his
lifetime, and without the presence or hearing of the defendant.
J. W. Sawyer, a witness on behalf of the prosecution, testi-
fied substantially that he remembered of the drug-store
business failing (referring to the fact that a drug-store
owned by Bare and defendant, Landis, failed in March, 1896,
and was sold out). Prior to that Fuller expressed himself
to the witness favorably of Dr. Landis. Afterwards he ex-
pressed himself that he believed that he, Landis, tried to
cheat him out of money. Theresa Henline, another witness on
the part of the prosecution, testified in substance that Fuller
said the doctor had attempted to swindle him out of eight
hundred dollars in that drug-store transaction, and would
have succeeded had it not been for the advice of friends.
H. S. Hosler, also produced as a witness on the part of the
prosecution, was allowed to testify in substance that he remem-
bered the time the Landis drug-store was closed, and at that
time had a conversation with Fuller, in which the witness said
to Fuller: "Why, is the doctor going to leave us? and he
says, 'Why,' and I said, 'They are loading his goods there
now,' and he said, 'Well, the damned thieving son of a bitch
can take it and go to hell with it now; I have got my money
out of it. I only loaned the damned thief the money to pay
off his creditors below, and then he tried to cheat me out of it.
I will give the devil his dues. He is a good physician, but
otherwise he is a damned thief. When that boy involved him
in that drug-store business, I showed my gratitude by loaning
him money to pay off his creditors below, and he goes and sells
the medicine and tries to ship it out of town unbeknown to
me. Landis told me he would get even with me. But I made
up my mind he would have to poison me to get even, becaus

would see he would get hold of no more of my money.' '' W. L. Bradley, also produced as a witness on the part of the prosecution, testified in substance that prior to the failure of the drug-store he had heard  Fuller express himself concerning Dr. Landis in a very harsh manner, and after that, up to the time of his death, he had heard him express himself frequently about Landis. ''He said he liked him very well as a physician, but as a man he did not like him.  About the 7th of October, 1897, I had a conversation with Alfred Fuller in which he stated he did not know why Dr. Landis had named his son after him. My wife remarked, 'It is for money, Mr. Fuller,' and Fuller remarked in reply that not one cent of his money should he ever get.''

This testimony forms no part of the *res gestæ*.  (Code Civ. Proc., sec. 1850.)  It is the mere rehearsal or narrative by the witnesses of what Fuller in his lifetime said or told them of and concerning the defendant.  It is not made under oath, nor in the presence or hearing of the defendant, and is hearsay pure and simple.  Having been admitted in evidence over the objection of the defendant, and retained as such by the court in denying his motion to strike out the same, it could not have failed to impress the jury with its importance, and must have been highly prejudicial to the defendant.  As said in *People* v. *Irwin*, 77 Cal. 499, ''It is impossible to conceive upon what theory these declarations were admitted.''  (See, also, *People* v. *Carlton*, 57 Cal. 83;[1] *People* v. *Powell*, 87 Cal. 363; *Estate of James*, 124 Cal. 659.)  In the latter case declarations made by the deceased, Dr. James, were admitted in evidence under objections, and the court says: ''We are satisfied the rules of evidence forbid the introduction of this kind of evidence.''  It is not *res gestæ*; neither does it belong to that class of hearsay which the law recognizes as competent and admissible evidence.  Inasmuch as the judgment will have to be reversed, on account of the errors already noticed, it will be unnecessary to consider any of the other alleged errors.

The judgment and order are reversed.

Angellotti, J., and Shaw, J., concurred.

[1] 40 Am. Rep. 112.