## THOMPSON v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 3, 1913.)

No. 2,136.

1. INDICTMENT AND INFORMATION (§ 15*)—SECOND INDICTMENT—FEDERAL GRAND JURY—JURISDICTION—STATE LAW.

Under Rev. St. U. S. § 800 (U. S. Comp. St. 1901, p. 623), providing that federal jurors shall have the same qualifications as jurors of the highest courts of law in the state. where they are to serve. and Cal. Penal Code, § 1008, as amended in 1905 (St. 1905, p. 773), providing that, if a demurrer is sustained to an indictment, it is a bar to another prosecution for the same offense, unless the court directs the case to be submitted to the same or another grand jury, a federal grand jury sitting in California, after having once found an indictment which is discovered to be defective, may return a second indictment for the same offense.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 83–88; Dec. Dig. § 15.*]

2. INDICTMENT AND INFORMATION (§ 137*)—MOTION TO QUASH—PENDENCY OF TWO INDICTMENTS.

Pendency of two indictments against the defendant for the same offense is not ground for motion to quash the second.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 480–487; Dec. Dig. § 137.*]

3. POST OFFICE (§ 48*)—RECEIVING STOLEN MAIL MATTER—INDICTMENT.

Rev. St. § 5470 (U. S. Comp. St. 1901, p. 3693), provides that any person who shall receive or conceal, or aid in receiving or concealing, any bank note, bank post bill, bill of exchange, etc., knowing any such article or thing to have been stolen or embezzled from the mail or out of any post office, shall be punishable. *Held*, that an indictment charging that defendant did willfully, etc., receive from A. certain described bank notes of a specified value which had been knowingly, etc., stolen from the mails, and that defendant at the time and place of receiving and concealing, etc., knew the same to have been unlawfully and feloniously stolen and carried away from the mails of the United States, imported that the concealment by defendant was done with an unlawful intent, and was therefore not objectionable for failure to charge the intent or the name of the owner.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 66–80; Dec. Dig. § 48.*]

4. POST OFFICE (§ 44*)—OFFENSES AGAINST THE MAILS.

In prosecuting offenders for violating Rev. St. U. S. §§ 5467, 5469, 5470 (U. S. Comp. St. 1901, pp. 3691–3693), prohibiting the receiving of articles stolen from the mails, opening of letters and fraudulently obtaining mail, etc., it is not necessary that the indictment allege, or that the government prove, all the essential ingredients of the crime of larceny.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 60, 61; Dec. Dig. § 44.*]

5. CRIMINAL LAW (§ 1120*)—WRIT OF ERROR—RULINGS ON EVIDENCE—BILL OF EXCEPTIONS.

Alleged wrongful admission of certain testimony cannot be reviewed, where the bill of exceptions does not contain the testimony given by the witness after the overruling of the objections urged.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2931–2937; Dec. Dig. § 1120.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

202 F.—26

6. CRIMINAL LAW (§ 413*)—EVIDENCE—SELF-SERVING DECLARATIONS.

Evidence that, after plaintiff was indicted for receiving or aiding in receiving or concealing money stolen from the mails, he went to witness, who was an attorney, and sought his advice as to whether he could institute a suit to ascertain who the money belonged to, and was informed that he could not as that would be betraying the secrets of his client, was inadmissible as self-serving declarations.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 928–935; Dec. Dig. § 413.*]

7. WITNESSES (§ 78*)—COMPETENCY—CONVICTION OF FELONY—PARDON—IDENTITY.

Where one who had been convicted of a felony was offered as a witness for the government against accused, and on objection produced a pardon bearing the same name as the witness, who testified that he had received the pardon and had accepted it, the proof sufficiently identified the witness as the person pardoned.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 195–200; Dec. Dig. § 78.*]

8. WITNESSES (§ 49*)—COMPETENCY—PARDON.

Where one convicted of certain felonies was offered by the government as a witness against accused and on objection produced pardons which were full and complete, they were effective to remove the penalties and disabilities and restore the witness to his rights, and were not objectionable as pardoning the offender, and not the offense, nor for failure to set forth the indictment and judgment of conviction for the offenses pardoned.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 116–118; Dec. Dig. § 49.*]

9. CRIMINAL LAW (§ 1144*)—WRIT OF ERROR—PRESUMPTIONS—FOUNDATION FOR EVIDENCE.

Where certain pardons were produced to qualify a witness who had been convicted of felonies against the United States, it would be presumed on writ of error, in the absence of anything appearing in the record to the contrary, that the court took judicial notice that the pardons related to the particular judgments under which the witness had been convicted, each pardon having stated the date of the conviction and sentence, and named the court in which the judgment was rendered.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2736–2781, 2901, 3016–3037; Dec. Dig. § 1144.*]

10. CRIMINAL LAW (§ 1122*)—WRIT OF ERROR—INSTRUCTIONS—REVIEW.

The Circuit Court of Appeals may refuse to review instructions objected to where the bill of exceptions does not contain all the instructions or the evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2940–2945; Dec. Dig. § 1122.*]

11. CRIMINAL LAW (§ 1137*)—APPEAL—INSTRUCTIONS—RIGHT TO ALLEGE ERROR.

Where accused requested an instruction in which certain witnesses were designated as accomplices, he could not object that an instruction given referred to the same witnesses as accomplices, in that the determination of the question whether they were accomplices or not was for the jury.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3007–3010; Dec. Dig. § 1137.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**12. CRIMINAL LAW (§ 1038*)—TRIAL—REQUEST TO CHARGE.**

    An objection that an instruction given should have been qualified would not be reviewed, where plaintiff in error failed to call the trial court's attention to the omission.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2999; Dec. Dig. § 1038.*]

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Olin Wellborn, Judge.

Fred H. Thompson was convicted of having unlawfully received and concealed and assisted another in concealing money stolen from the United States mails, and he brings error. Affirmed.

Fred H. Thompson, of Los Angeles, Cal., in pro. per., and Paul W. Schenck, of Los Angeles, Cal., for plaintiff in error.

A. I. McCormick, U. S. Atty., and Edward A. Regan and Harry R. Archbald, Asst. U. S. Attys., all of Los Angeles, Cal.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. The plaintiff in error, an attorney at law practicing at Los Angeles, Cal., defended Orlando F. Altorre in a case in which Altorre was indicted for stealing $15,000 in currency from the mails of the United States. Altorre was employed in the registry division of the post office at Los Angeles. In June, 1909, he stole from the mail two packages of currency which had come into his possession as registry clerk, one containing $10,000 and the other $5,000. Altorre was convicted on the indictment for stealing from the mails, also on an indictment for perjury, and was sentenced to serve a term of two years in Leavenworth and pay a fine of $1. In July, 1910, the plaintiff in error was indicted by the federal grand jury at Los Angeles, indictment No. 268, charging him with having unlawfully received and concealed, and assisted Altorre in concealing, the money above referred to. Shortly afterwards, in order to avoid certain objections which had been made to the indictment, a second indictment, No. 295, was returned against the plaintiff in error and his wife, and on that indictment he was convicted.

Error is assigned to the refusal of the trial court to quash indictment No. 295. The motion is based on two grounds, the first of which is that prior to finding and returning the same the grand jury had found and presented indictment No. 268 against the plaintiff in error and Etta M. Thompson, his wife, accusing them and each of them with the identical offense embraced in indictment No. 295, and that the defendants in indictment No. 268 had been arraigned and had entered their pleas, and the trial had been set for a day certain.

[1] The contention is that under the law of California, which it is said became the rule of practice for the federal courts in·that state, a grand jury which has once indicted a defendant is disquali-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fied to bring in a second indictment against him charging him with the same offense. Assuming for the purpose of this discussion that section 800 of the Revised Statutes (U. S. Comp. St. 1901, p. 623), which provides that "jurors to serve in federal courts shall have the same qualifications as jurors of the highest courts of law in the state where they are to serve," is applicable to the case, we turn to the statutes and decisions of California for light upon the question whether the grand jury was disqualified to bring in the second indictment. Counsel for plaintiff in error cite three decisions—People v. Hanstead, 135 Cal. 149, 67 Pac. 763; People v. Bright, 157 Cal. 663, 109 Pac. 33; People v. Landis, 139 Cal. 426, 73 Pac. 153. The two cases last named are not in point, but People v. Hanstead holds distinctly in accordance with the contention of the plaintiff in error. That was a decision by a department of the Supreme Court, and it runs directly counter to a former decision of that court in banc, reported in People v. Northey, 77 Cal. 618, 19 Pac. 865, 20 Pac. 129. The opinion in the Hanstead Case takes no note of the Northey Case, and the court would seem to have overlooked the decision in that case. The practice in the state of California, therefore, cannot be said to be settled in favor of the proposition for which the plaintiff in error contends. It is to be observed that all of the decisions of the Supreme Court of California above cited were rendered prior to the change in section 1008 of the Penal Code, which was made in 1905 (St. 1905, p. 773). That section prior to the amendment provided that, if a demurrer were sustained to an indictment, it was a bar to another prosecution for the same offense, unless the court being of the opinion that the objection to which the demurrer was allowed might be avoided in a new indictment "directs the case to be submitted to another grand jury." The section as amended substitutes for the last clause the following: "Directs the case to be submitted to the same or another grand jury"—thereby declaring the law of the state to be that a grand jury which had once found an indictment against a defendant was not disqualified to find a second indictment against him upon the same facts, a wise provision of law, and we may well wonder why it should ever have been held otherwise, as no substantial reason is apparent why a grand jury after having once found an indictment which is discovered to be defective in form may not, upon the information which it has acquired, and with the same conviction, based upon that information, that the defendant should be brought to trial, present a second indictment for the same offense.

[2] The second ground of the motion to quash, which was that there were pending two indictments against the defendant for the same offense, is not sustainable. It is not supported by any citation of authority, probably for the reason that none could be found. In O'Meara v. State, 17 Ohio St. 516, the court, referring to a similar contention, said:

"We know of no such law. The last indictment is as valid as the first. Two indictments for the same offense are often pending at the same time. The state can only proceed upon one of them, but may elect upon which it will proceed."

The same was held in Smith v. Commonwealth, 104 Pa. 339, Commonwealth v. Drew, 3 Cush. (Mass.) 279, Dutton v. State, 5 Ind. 533, and State v. Lambert, 9 Nev. 321.

[3] It is contended that the court erred in overruling the demurrer to the indictment, that the indictment is faulty, in that it fails to charge the intent with which the money was received, or from whom it was concealed, or the name of the owner thereof. The defendant was indicted under section 5470 of the Revised Statutes (U. S. Comp. St. 1901, p. 3693), which provides that:

"Any person who shall buy, receive or conceal, or aid in buying, receiving or concealing * . * * any bank note, bank post bill, bill of exchange, etc. * * * knowing any such article or thing to have been stolen or embezzled from the mail or out of any post office * * * shall be punishable," etc.

The indictment charges that the defendant did willfully, knowingly, unlawfully, and feloniously receive from Altorre the bank notes which were therein described, and states the value thereof, and charges that they had been knowingly, unlawfully, and feloniously stolen and taken and carried away from the mails of the United States in a post office of the United States at Los Angeles by the said Altorre, and that the defendants at the time and place of receiving and concealing, and aiding in concealing said articles, knew the same to have been unlawfully and feloniously stolen, taken, and carried away from the mails of the United States. These allegations clearly import that the concealment by the defendants was criminal, and done with an unlawful intent, and they cover all the elements of the crime which is described in section 5470. The purpose of the statutes (sections 5467–5470 [U. S. Comp. St. 1901, pp. 3691–3693]) is to protect the mails against plundering, pilfering, or other interference or meddling with their contents.

[4] In prosecuting offenders for violation of sections 5467, 5469, and 5470, it is not necessary to allege in the indictment or to prove on the trial all the essential ingredients of the crime of larceny. United States v. Falkenhainer (C. C.) 21 Fed. 624; United States v. Jolly (D. C.) 37 Fed. 108; United States v. Atkinson (D. C.) 34 Fed. 316; United States v. Trosper (D. C.) 127 Fed. 476; Bowers v. United States, 148 Fed. 379, 78 C. C. A. 193.

[5] It is assigned as error that upon the examination of Maude J. Matthews, a witness for the government as to certain alleged automobile transactions occurring after the commission of the acts charged in the indictment, the court overruled the objections of plaintiff in error to the following question: "Will you state what happened at the time they came in to negotiate with you?" The bill of exceptions informs us that, after the objections were overruled, the witness was allowed to testify "in support of the charges set forth in said indictment, and particularly with reference to said alleged automobile transactions occurring after the commission of the alleged offense." None of the evidence is contained in the bill of exceptions, and we have no means of knowing that any testimony so given was injurious to the plaintiff in error or beneficial to the cause of the government. In the absence of such a showing, no error will be presumed. These re-

marks are applicable also to the error assigned to the admission of testimony of Frank S. Hutton. Also to the assignment that the court erred in permitting Jackson F. Durlin, deputy marshal, to identify "Plaintiff's Exhibit 14 consisting of the top of a jar," and to the denial of the motion to strike out the testimony of the witness with reference to finding the same, on the ground that it occurred more than a year after the matter charged in the indictment. We have no means of knowing how the evidence could possibly have tended to incriminate or prejudice the plaintiff in error.

[6] It is assigned as error that the court excluded testimony proposed to be adduced by Gesner Williams, to show that the plaintiff in error, after his arrest, consulted the witness who was an attorney, and sought his advice as to what to do under the circumstances, and informed him that he, the plaintiff in error, did not know that the money was stolen, and inquired whether or not he could bring a suit and bring in the bank which claimed to own the money, the Insurance Company, Altorre, and all other parties interested in it, to determine to whom the money belonged, and that the witness advised him that he could not do so, that he would be betraying the secrets of his client. This testimony was clearly incompetent. To prove the statements made to Williams would be to show only the self-serving declarations of the plaintiff in error made after he had been arrested and charged with the crime of which he was subsequently convicted.

Altorre was called as a witness for the government. His testimony was objected to on the ground that he had been convicted of perjury and sentenced therefor. The witness produced a pardon which he testified he had received and accepted. It was dated March 21, 1911, was signed by the President, and it pardoned Altorre of the crime of perjury and also of the crime of embezzling the money which the plaintiff in error was charged with concealing. He produced also a pardon of date September 28, 1911, pardoning him of the offense of feloniously stealing, taking, and carrying away certain articles of value from a mail bag of the United States, in violation of section 5467. The objection was made to the first pardon that it was not full and complete, and to the second pardon that it was incompetent, irrelevant, and immaterial, and that no proper foundation had been made for its introduction. The bill of exceptions then recites that the objections to the introduction of the pardons were overruled, to which exception was taken, and thereupon the witness was allowed to testify "in support of the charges set forth in said indictment." The contention is that it does not appear that the witness was the same person as the person named in the pardons, that the pardons did not pardon any offense but pardoned the offender, and that the pardons failed to set forth the indictment and conviction for the offense committed against the United States.

[7] There is no merit in any of these objections. The witness bearing the name of the person named in the pardons, testified that he had received the pardons and accepted them. That was sufficient to identify him.

[8] The pardons were full and complete, and their effect in law was to remove penalties and disabilities and restore the witness to his full rights. Said the court in Ex parte Garland, 4 Wall. 333, 380 (18 L. Ed. 366): "It makes him, as it were, a new man, and gives him a new credit and capacity."

[9] As to the objection that no proper foundation was laid for the introduction of the pardons, it is sufficient to say that the record is silent in that respect, and it will be presumed that it was shown, or that the court took judicial notice that the pardons related to the particular judgments under which Altorre had been convicted in that court of violation of section 5467 and of perjury, for each pardon contained the date of the conviction and sentence, and named the court in which the judgment was rendered.

[10] Error is assigned to certain instructions of the court to the jury. The bill of exceptions contains none of the evidence, nor does it purport to contain the whole of the instructions. For these reasons we might properly decline to enter into a consideration of these assignments. But, assuming that the whole of the instructions are before us, we find no substantial merit in any of the objections that are raised thereto.

[11] For example, error is assigned to the following:

"The court has been requested to instruct you on the law with reference to accomplices, especially as affecting the testimony of Mrs. Anna White and Orlando F. Altorre, and you are accordingly instructed that accomplices are competent witnesses," etc.

The objection made to this is that the court characterized the witnesses as accomplices, whereas the question whether they were such was to be determined by the jury. It is clear, however, from the opening sentences of the instruction that it was given in compliance with the request of the plaintiff in error and that the witnesses were designated accomplices in the request, for it appears in a requested instruction which the court refused to give that the plaintiff in error requested the following:

"If the testimony of Mrs. Anna White is to be believed at all, she was what is known in the law as an accomplice," etc.

[12] Again, after quoting a lengthy sentence from the instructions, the plaintiff in error asserts that there should have been a few words added by way of qualification. If he thought that those words were a necessary qualification of the instructions, he should have directed the attention of the court to their omission. As it was, all that the bill of exceptions shows is that the defendant took an exception and the exception was allowed to the whole of an instruction which involved a number of propositions, in none of which in our judgment was there any error.

It is unnecessary to go into further detail, or to enter into a further discussion of the numerous assignments of error to the refusal of the court to grant requested instructions. We find no error in any of them.

The judgment is affirmed.