# STATE OF NORTH DAKOTA, Respondent, v. F. C. ROTHER, Appellant.

(219 N. W. 574.)

**Criminal law — refusal to permit evidence to support motion to set aside indictment on statutory grounds is prejudicial error.**

1. Under § 10,641, Comp. Laws 1913, authorizing the challenging of an individual grand juror on the ground that a state of mind exists on his part in reference to the case, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging, and § 10,728, Comp. Laws 1913, which provides that when the defendant had not been held to answer before the finding of the indictment, the

Note.—(2) Intention of legislature determined primarily from language of statute, see 25 R. C. L. 961; 3 R. C. L. Supp. 1435; 4 R. C. L. Supp. 1611; 5 R. C. L. Supp. 1355; 6 R. C. L. Supp. 1494.

indictment must be set aside by the court in which the defendant is arraigned, upon his motion, on any ground which would have been a good ground for a challenge to an individual grand juror, it is error, prejudicial to the rights of the defendant, for the trial court to refuse a defendant, who has moved to set aside an indictment on one of the grounds specified in the statute, opportunity to adduce proof in support of the motion.

**Constitutional law — lawmakers intention is to be found in statute's language.**

2. It is a primary rule of statutory construction that the intention of the lawmaker is to be found in the language that he has used. The legislature must be understood to mean what it has plainly expressed and if a law is plain and within the legislative power, it declares itself and the courts have only the simple and obvious duty to enforce the law according to its terms.

**Criminal law — instructing in regard to exhibiting false paper to examiner held error in instant case.**

3. In the instant case it is held that the trial court erred in instructing the jury that if they should find one A. guilty of exhibiting a false paper to the deputy state examiner, with intent to deceive, then they would have to find that the defendant Rother aided and abetted A. in committing the crime.

Opinion filed April 20, 1928.　Rehearing denied June 7, 1928.

Banks and Banking, 7 C. J. § 194 p. 574, n. 76; § 697, p. 801 n. 21; § 713 p. 803 n. 74.　Constitutional Law, 12 C. J. § 387 p. 885 n. 9.　Criminal Law, 16 C. J. § 2370 p. 972 n. 75; 17 C. J. § 3618 p. 284 n. 86.　Statutes, 36 Cyc. p. 1107 n. 30, 31.

Appeal from the District Court of Rolette County, *Lowe,* J.

The defendant was convicted of the crime of exhibiting a false paper to a person authorized to examine as to the condition of a bank, with intent to deceive such person, and appeals from the judgment of conviction and from an order denying a new trial.

Reversed.

*Kehoe & Verret, F. T. Cuthbert,* and *J. C. Adamson,* for appellant.

"The pleader can charge the offense to have been committed with respect to any book in which the false entry is carried, but he must, of course, be prepared to prove that the defendant either personally made the entry, specifically directed it to be made, or knowingly directed it through his general control of the manner in which the books were kept."　State v. Davidson, 46 N. D. 564, 180 N. W. 31.

The presence of a disqualified grand juror vitiates the whole panel. See People v. Wintermute, 1 Dak. 63 and cases cited.

"The presence of one disqualified person upon the panel invalidates all indictments found." Com. v. Green, 126 Pa. St. 531, 12 Am. St. Rep. 894.

*George F. Shafer,* Attorney General, *L. L. Butterwick,* Assistant Attorney General, and *Chas. H. Houska,* State's Attorney, for respondent.

"The grounds assigned for quashing, if not established by the record, must be sustained by distinct evidence introduced or offered by accused, accused being entitled to introduce such evidence if his motion is sufficient in law and having the burden of proof." 31 C. J. 813.

"The question of the credibility of the witnesses and the credence to be given to their testimony was a matter for the jury, and its finding, based upon conflicting evidence, is binding upon the court." State v. Cray, 31 N. D. 67, 153 N. W. 425.

"It has been held that an instruction is not erroneous which tells the jury that they are not at liberty to disbelieve as juror, if from the evidence they believe as men, and that the oath they take as jurors imposes no obligation to doubt where no doubt would have existed if the oath had not been administered." 16 C. J. 995, § 2406.

"Mere defectiveness or inaccuracy in the charge is not necessarily sufficient to justify a reversal. . . . An instruction which states the law inaccurately or even incorrectly in part, may be cured by other portions of the charge which correctly states the law." State v. Hoof, 29 N. D. 412, 150 N. W. 929; 16 C. J. 1053; State v. Carter, 50 N. D. 270, 195 N. W. 567.

Statement of facts by CHRISTIANSON, J.

Section 5174, Supplement to the 1913 Compiled Laws of North Dakota, provides:

"Every officer, agent or clerk of any association organized under this chapter, who wilfully and knowingly subscribes or makes any false statements or entries in the books of such association, or knowingly subscribes or exhibits any false paper with intent to deceive any person authorized to examine as to the condition of such association, or wilfully subscribes or makes any false report, shall be guilty of

forgery as defined in the penal code of the state of North Dakota and punished accordingly."

The defendant was indicted in the district court of Towner county for a violation of this section by exhibiting a false paper to a person authorized to examine as to the condition of a banking association. The indictment charged that the offense was committed as follows, to wit:

"That at the said time and place, the said F. C. Rother, then and there being an officer, to wit; the president of the Towner County Bank, a banking association then and there duly organized and existing under and by virtue of the laws of the state of North Dakota and engaged in the banking business at Perth, Towner county, North Dakota, and as such president having the general management of the business and control of the property, books, records, and assets of said bank, did then and there wilfully and knowingly, unlawfully and feloniously and with intent to deceive, exhibit to J. L. McRae, a person authorized to examine and then and there examining said Towner County Bank as to its condition, a false paper, to wit, a writing purporting to be a promissory note made, executed and delivered by one Margaret Hood, dated January 14, 1922, wherein and whereby said Margaret Hood promised and agreed to pay to the order of said Towner County Bank the sum of $1,700 on the 1st day of November, 1922, with interest thereon, a more accurate description of which said purported note cannot be given, whereas in truth and in fact the said pretended note was then and there false, fraudulent, fictitious and forged and constituted no obligation of the said Margaret Hood and was of no value, and the said F. C. Rother did then and there and at the time of exhibiting such false paper, know said pretended note to be false, fraudulent, fictitious, and forged."

Defendant entered a plea of not guilty. He, also, moved for a change of venue on the first three grounds specified in § 10, 756, Comp. Laws 1913. The place of trial was changed to Rolette county upon order of the court entered pursuant to stipulation of the parties. Later he asked leave to withdraw the plea for the purpose of interposing a motion to quash the indictment. The application to withdraw the plea for the purpose of moving to quash the indictment was supported by the affidavit of the defendant to the effect that until the return of said

indictment into court no criminal proceedings of any kind or character were pending or had been instituted in any court in the state of North Dakota against affiant; that he was not in custody nor under recognizance when the grand jury was impanelled and that he had had no opportunity to submit any challenge to the grand jury or any member thereof; that one John McIlrath was a member of the grand jury which returned the indictment; that he was not a disinterested and impartial member of said grand jury; that said McIlrath was instrumental in having the grand jury called and personally circulated a petition for the calling thereof; that no grand jury would have been called but for the interest and activity of said McIlrath; that said McIlrath was and is an enemy of the defendant and was interested in the procuring of the indictment against the defendant; that the position of McIlrath in the grand jury room was that of a private prosecutor, and that if he had not been a member of the grand jury no indictment would have been found or returned against the defendant; that the deliberations of the grand jury were dominated by the said McIlrath to the end that an indictment might be returned against the defendant.

The trial court entered an order in writing granting defendant's motion for leave to withdraw the plea of not guilty for the purpose of making a motion to set aside the indictment. Thereafter, defendant filed a motion in writing that the indictment be set aside for the following reasons:

## 1.

"That one John McIlrath was a member of the grand jury that returned the indictment against defendant in this case; that the said John McIlrath was one of the grand jurors that voted to indict defendant; that the said John McIlrath was then and there of such a frame of mind that he could not and did not act impartially and without prejudice to the substantial rights of the defendant in said matter; that he the said John McIlrath was the person who first moved to have a grand jury called at the last term of district court in Towner county; that he the said John McIlrath personally circulated the petitions for the calling of said grand jury and that his object at all times in securing the presence of a grand jury at said term of court was to have defendant indicted regardless of the evidence; that he the said John McIlrath

was then and there violently and without cause prejudiced against the defendant; that he dominated said grand jury and forced an indictment against defendant, voting in favor thereof.

2.

"That prior to the return of said indictments against defendant (five in number) no criminal proceedings of any kind or character were pending or had been instituted in any court in the state of North Dakota, against this defendant; that he was not in custody or under recognizance when the grand jury was impaneled and defendant had no opportunity to challenge said grand juror John McIlrath, or any of the grand jurors, before the swearing in of the said grand jury and before the finding of the bill (indictment) against him by said grand jury; that if he had had opportunity to challenge the said John McIlrath he could then and there have shown to the satisfaction of the presiding judge of said court said John McIlrath was not a fair and impartial grand juror and that he the said John McIlrath could not without prejudice to the substantial rights of the defendant be present at or take part in the consideration of charges against this defendant by said grand jury and act as a member of said grand jury.

3.

"That the said John McIlrath was incompetent in law to act as a grand juror in the consideration of charges then and there before said grand jury against this defendant and incompetent to participate in and vote for a bill (indictment) against this defendant.

4.

"That the presence in the grand jury room of the said John McIlrath and as a member of said grand jury he being then and there disqualified to act as a member of said grand jury considering charges against this defendant vitiated the findings of said grand jury in considering charges against this defendant and vitiated the indictment returned against defendant in this case by said grand jury, the presence in the grand jury room of the said John McIlrath and his participation in the deliberations of said grand jury and his voting as a member thereof in connection with the return of indictments against defendant worked a manifest and substantial injury to defendant.

5.

"That the position of the said John McIlrath in said grand jury room was then and there in fact the position of a private prosecutor actuated by private enmity against this defendant and then and there seeking the gratification of his own personal malice against this defendant, to the manifest and substantial injury of defendant."

The trial court entered a written order reciting that said motion to quash came duly on for hearing and that the attorneys for the defendant offered to prove:

"That at the regular March A. D. 1926 term of the district court of Towner county, North Dakota, a grand jury was called and impanelled by order of the presiding judge of such court; that until the return of the indictment involved in this case in said Towner county district court no criminal proceedings of any kind or character were pending or had been instituted in any court in the state of North Dakota against the defendant and that he was not in custody or under recognizance to answer any charge in said Towner county district court or in any other district court of the state of North Dakota either at the time of impanelling said grand jury or the return of said indictment; that said John McIlrath was a member of said grand jury which found the indictment herein against the defendant and participated in the deliberations of said grand jury, which resulted in the finding of such indictment; and a state of mind existed at the time of such deliberations and the finding of such indictment on the part of the said grand juror John McIlrath in reference to this case and in reference to the defendant herein which prevented him from acting impartially and without prejudice to the substantial rights of the defendant, and disqualified him to act as such grand juror, an unqualified bias on the part of the said John McIlrath as such grand juror as against the defendant herein."

The order further recites that "it appearing that such offer should be denied and the court being duly advised in the premises. It is ordered that the aforesaid offer of the defendant be and the same is hereby in all things denied and the motion of the defendants to quash the indictment herein be and the same is hereby in all things overruled."

After the motion to quash had been denied the defendant interposed

56 N. Dak.—56.

a plea of not guilty. The case was tried to a jury upon the issues thus formed.

. The evidence shows that during all the time involved in this action the defendant was the president of the Towner County Bank at Perth and one Alcock was the cashier of such bank. One Margaret Hood was an employee in the bank in 1910; she later married and became Mrs. McCuley. After she left the employment of the Towner County Bank, and about January 1920, she sent $2,500 to the defendant Rother for investment. The defendant invested this money by purchasing four promissory notes from the Towner County Bank, being one note in the sum of $1,000 and three notes each in the sum of $500. The defendant Rother, personally guaranteed payment of such notes. It appears that the notes were not paid and in 1922 Mrs. McCuley informed the defendant or the bank that she desired some of her money. She returned the notes and the bank sent her a check or draft for $1,700. As a counterchange to the money so sent, defendant prepared a promissory note in the sum of $1,700 and signed the name of Margaret Hood thereto with his initial "R" underneath the signature and marked the note "memo" "memorandum" or "collateral" and placed it in the pouch containing the past due paper of the bank. This note remained part of the assets of the bank until sometime after May 6, 1925; but it was removed between that day and October 28, 1925, the date the bank closed. The evidence shows that interim May 6, 1925 and October 28, 1925, this and a number of other notes were removed from the assets of the bank pursuant to the orders of the state examiner. The bank was examined by the deputy examiner, McRae, on and about May 6, 1925. McRae testified that at that time the $1,700 Hood note was among the bills receivable of the bank in the past due paper pouch. He also testified that the defendant Rother was not present at the time this examination took place, and that his dealings at that time were had with Alcock, the cashier. McRae further testified as regards the note: "It was told to me by Mr. Alcock that Mr. Rother made the deal, that he did not know anything about it, that is all the information I have got in regard to the note." Alcock testified that the note in question was carried as an asset of the bank from on or about January 14, 1922; that it was a memorandum note and "represented the bank's equity" in the four promissory notes aggregating $2,500 belong-

ing to Mrs. McCuley; that at one time a deputy examiner who examined the bank suggested that these notes be pinned to the memorandum note.

It is the contention of the prosecution that the Hood note was a forgery; that it was placed in the assets of the bank by Rother with intent to deceive the examiner; that it was exhibited by him to the state examiner and his deputies as, and represented to be, an actual promissory note of Margaret Hood, and was so accepted and considered by the examiner. It is the contention of the defendant, on the other hand, that the note was not a forgery; that it showed on its face that it was not executed by Margaret Hood, and that it was merely a memorandum note; that the nature of the transaction was explained to the deputy examiner; that there was no intention to deceive the examiner and that the transaction was one in which the defendant acted with an honest purpose and without any intent to deceive.

In its instructions to the jury the court said:

"Now the law under which this action is brought reads as follows: Every officer of a banking corporation who knowingly exhibits any false paper with intent to deceive any person authorized to examine the same as to the condition of such bank shall be guilty of the crime of exhibiting a false statement. The defendant is charged with knowingly exhibiting a false paper with intent to deceive the bank examiner or deputy when examining the bank as to its condition, and that at the said time of exhibiting said paper he was an officer of the banking association organized under the laws of North Dakota. I charge you that you cannot find the defendant guilty of exhibiting a false paper unless you find that the witness Alcock is guilty of exhibiting a false paper with intent to deceive the bank examiner or deputy when examining the bank as to its condition, and that the defendant Rother aided and abetted Alcock in the commission of such crime or not being present advised and encouraged its commission. Before you can find the defendant guilty, you must find in addition to the other allegations that at the time that Alcock exhibited a false statement to the examiner if you find he did that, he intended to deceive the examiner as to the bank's condition.

"You are instructed that the intent with which an act is done is a mental process and as such generally remains hidden within the mind

where it is conceived, and is rarely, if ever, susceptible of proof by direct evidence, but may be inferred from the outward manifestations, by the words or acts of the party entertaining it, and the facts and circumstances surrounding or attending upon the acts sought to be proved, with which it is charged to be connected.

"In other words, before you can find the defendant guilty you must find that Alcock is guilty, and that Mr. Rother aided and abetted or encouraged Alcock in committing the crime. In other words, it would be just the same as though Mr. Alcock was the defendant here or that they were both defendants. You have to find Alcock guilty before you can find Rother guilty. *If you should find Alcock guilty then you would have to find that Rother aided and abetted Alcock in committing the crime."*

The jury returned a verdict of guilty and the defendant was sentenced to imprisonment in the state's penitentiary for an indeterminate period of not less than one year and not more than four years. Defendant moved for a new trial. The motion was denied; and defendant has appealed from the judgment and from the order denying a new trial.

CHRISTIANSON, J. (after stating facts as above). The various specifications of error on this appeal resolve themselves into the following:

(1) Error assigned on the ruling of the court in refusing to permit the defendant to adduce proof in the support of the motion to quash the indictment.

(2) Error assigned on the instructions to the jury.

(3) Alleged insufficiency of the evidence to sustain the verdict.

These contentions will be considered in the order stated.

(1) By the statutes of this state it is provided: "All crimes or public offenses triable in the district courts must be prosecuted by information or indictment" (except proceedings for the removal of public officers). Comp. Laws 1913, § 10,625. "The state or a person held to answer a charge for a public offense, may challenge the panel of a grand jury or an individual grand juror." Comp. Laws 1913, § 10,636.

"A challenge to an individual grand juror may be interposed by either party for one or more of the following causes only . . . (7)

That a state of mind exists on his part in reference to the case, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging." Comp. Laws 1913, § 10,641.

"Challenges may be oral or in writing, and must be tried by the court." Comp. Laws 1913, § 10,642.

"The . . . indictment must be set aside by the court in which the defendant is arraigned, upon his motion in either of the following cases: . . ."

"(4) When the defendant had not been held to answer before the finding of the indictment, on any ground which would have been good ground for a challenge either to the panel or to any individual grand juror." Comp. Laws 1913, § 10,728.

These statutory provisions seem decisive of the first assignment of error and necessitate a reversal of the judgment of conviction.

The territorial supreme court had occasion to consider somewhat similar provisions in the People v. Wintermute, 1 Dak. 63, 46 N. W. 694. In that case a challenge was submitted to an individual grand juror under a statute authorizing such challenge on the ground "that a state of mind exists on his part in reference to the case, or to either party, which satisfies the court in the exercise of sound discretion, that he cannot act impartially and without prejudice to the substantive rights of the party challenging." The trial court denied the challenge on the ground that this statute had been repealed. The territorial supreme court held that the trial court was in error; that the statute was in force and that the denial to the defendant of "the right to challenge a juror for partiality and a condition of mind prejudicial to the substantive rights of the defendant" constituted reversible error. In the opinion in the case it was said that "the presence of a disqualified grand juror vitiates the whole panel." 1 Dak. 64.

The several statutory provisions quoted above were originally enacted as a part of the Code of Criminal Procedure of the Territory of Dakota of 1877,—some two years after the rendition of the decision in People v. Wintermute, supra, and they have remained in full force and effect in this jurisdiction, without change since their adoption. In the Constitution of this state it was provided:

"Until otherwise provided by law, no person shall, for a felony, be

proceeded against criminally, otherwise than by indictment, except in cases arising in the land of naval forces, or in the militia when in actual service in time of war or public danger. In all other cases, offenses shall be prosecuted criminally by indictment or information. The legislative assembly may change, regulate or abolish the grand jury system." N. D. Const. § 8.

In conformity with this constitutional provision the legislature adopted a Code of Criminal Procedure. See Comp. Laws 1913, §§ 10,384, et seq. In such Code of Criminal Procedure the various sections quoted above—(first enacted by the territorial legislature in 1877), were retained without change. It is difficult to add anything to the force or effect of these provisions. The legislative intention seems too clear for controversy.

The object of all interpretation and construction of statutes is to ascertain and carry out the intention of the lawmakers. 26 Am. & Eng. Enc. Law, 2d ed. p. 597. And "the primary and general rule of statutory construction is that the intention of the lawmaker is to be found in the language that he has used." United States v. Goldenberg, 168 U. S. 95, 102, 103, 42 L. ed. 394, 398, 18 Sup. Ct. Rep. 3. "The legislature must be understood to mean what it has plainly expressed, and this excludes construction. The legislative intent being plainly expressed, so that the act read by itself, or in connection with other statutes pertaining to the same subject, is clear, certain, and unambiguous, the courts have only the simple and obvious duty to enforce the law according to its terms." 2 Lewis's Sutherland, Stat. Constr. 2d ed. p. 701. "Courts only determine by construction the scope and intent of a law when the law itself is ambiguous or doubtful. If a law is plain, and within the legislative power, it declares itself and nothing is left for interpretation. It is as binding upon the court as upon every citizen. To allow a court, in such a case, to say that the law must mean something different from the common import of its language, because the court may think that its penalities are unwise or harsh, would make the judicial superior to the legislative branch of the government, and practically invest it with the lawmaking power." The remedy for a harsh or unwise statute is not in interpretation, but in amendment or repeal. State v. Duggan, 15 R. I. 403, 6 Atl. 787; 2 Lewis's Sutherland, Stat. Constr. p. 706.

The statutory provisions quoted above are not couched in doubtful or ambiguous language. The language employed is plain, specific and emphatic. They say that "a person held to answer a charge for a public offense may challenge an individual grand juror" (§ 10,636) on the ground "that a state of mind exists on his part in reference to the case or to either party which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging." Section 10,641. They further say that "when the defendant had not been held to answer before the finding of the indictment" the indictment must be set aside by the court in which the defendant is arraigned upon his motion, "on any ground which would have been a good ground for challenge either to the panel or to any individual grand juror." Section 10,728. It is difficult to conceive how language more specific, plain or emphatic could have been employed.

It is suggested by the prosecution that even though the trial court erred in its rulings on the motion to set aside the indictment that the error was one without prejudice; that such ruling at most deprived defendant "of the opportunity to delay the trial a few months but in no way affected the merits of the question actually involved in the law suit." This is an argument that should be addressed to the legislature rather than to the courts. It is tantamount to saying that the courts should ignore, and in effect repeal, or at least refuse to enforce, the statutory provisions above quoted. If we were lawmakers, we might, and probably would, be inclined to adopt different rules as regards the setting aside of an indictment. But we are not lawmakers. Our duty is to interpret, not to make, laws. The lawmakers have said in the most emphatic terms that a person who has not been held to answer may move to set aside an indictment returned against him, on the ground, among others, that a state of mind existed on the part of an individual grand juror who participated in the consideration of the charge, which would prevent him from acting impartially and without prejudice to the substantial rights of the accused; and they have further said that when the question of the disqualification of a grand juror is so raised it must be tried by the court; and if the ground alleged is found to be well founded, the indictment must be set aside. The language used by the legislature, as regards this matter, is not susceptible of two meanings. It is clear and emphatic and the courts have only

the simple and obvious duty to enforce the law according to its terms. 2 Lewis's Sutherland, Stat. Constr. 2d ed. p. 701.

The conclusion thus reached is in harmony with that reached by other courts in construing similar or analogous statutes. Eureka County Bank Habeas Corpus Cases, 35 Nev. 80, 126 Pac. 655, 129 Pac. 308; People v. Landis, 139 Cal. 426, 73 Pac. 153; People v. Bright, 157 Cal. 663, 109 Pac. 33; People v. Turner, 39 Cal. 370. The California cases involved statutory provisions similar to the above quoted provisions of §§ 10,641 and 10,728, supra. The California statutes and the conclusion reached by the court as to their effect were epitomized in People v. Bright, 157 Cal. 663, 109 Pac. 33, as follows:

"The defendant had not been held to answer before the finding of the indictment. The motion to set aside the indictment was based on the ground that one of the grand jurors, Charles E. Blanchard, had such a state of mind in reference to the cause as would prevent him from acting impartially and without prejudice to the substantial rights of the defendant. Our Penal Code provides that an indictment must be set aside by the trial court, on motion of the defendant, 'when the defendant had not been held to answer before the finding of the indictment, on any ground, which would have been good ground for challenge, either to the panel or to any individual grand juror' (§ 995), and that a challenge to an individual grand juror may be interposed on the ground 'that a state of mind exists on his part in reference to the case, or to either party, which would prevent him from acting impartially and without prejudice to the substantial rights of the party challenging,' with the same proviso as to opinions founded on public rumor, statements in public journals, or common notoriety as exists in regard to trial jurors (§ 896). Where it is found on such a motion made by a defendant, who had not been held to answer prior to indictment, that the individual grand juror was disqualified to act by reason of this statutory provision, and that the challenge is good, the trial court is bound to set aside the indictment (People v. Landis, 139 Cal. 426, 73 Pac. 153), provided, of course, such juror has taken part in the consideration of the charge against the defendant, or the deliberations of the grand jury therein. Penal Code, 900."

It is contended by the state that the offer of proof was not sufficiently specific; that it should have contained the names of the witnesses by

whom the defendant intended to prove the claimed facts. In our opinion this contention is not well founded. The statute specifically provides that the challenge to a grand juror may be written or oral. It further provides that when a motion is made to set aside an indictment, the motion must be in writing and that it must specify the grounds of the objection to the indictment. Comp. Laws 1913, § 10,729. It is clearly contemplated that when the accused calls to the attention of the trial court, in the manner and at the time provided by the statute, that a grand juror is disqualified and that the accused challenges the right of the grand juror to participate in the case, or the validity of the indictment returned by the jury of which he was a member, the accused shall have an opportunity to prove the charge so made. That the record in this case establishes a denial of defendant's right to attack the indictment on the ground and in the manner which the statute authorizes, is, we think, too clear for controversy. And that the denial of this right must be given the effect that the lawmakers have declared that it shall have is, we think, equally plain. People v. Landis; People v. Bright; and People v. Turner, supra; People v. Wintermute, 1 Dak. 63, 46 N. W. 694; Eureka County Bank Habeas Corpus Cases, supra.

(2) We are also of the opinion that the trial court erred in instructing the jury:

"If you should find Alcock guilty, then you would have to find that Rother aided and abetted Alcock in committing the crime."

The indictment in this case charged that the defendant did, "willfully and knowingly, unlawfully and feloniously, and with intent to deceive, exhibit to J. L. McRae, a person authorized to examine, and then and there examining said Towner County Bank, as to its condition, a false paper," etc. By the express language of § 5174, supra, "intent to deceive" is an essential ingredient of the offense created by and defined in that section. The defendant in this case is not charged with making or subscribing a false instrument. The charge is that he "exhibited" a forged paper to a deputy state examiner with intent to deceive. Unless the paper was exhibited with intent to deceive there was no offense. See 7 C. J. pp. 801, 803. Under the court's instructions in this case it would be the duty of the jury (at least the instruction is reasonably susceptible of this meaning) to find Rother guilty if they

believed that Alcock was guilty of exhibiting a forged note to the deputy examiner with intent to deceive him. There is no dispute in the evidence but that Rother signed the name of Margaret Hood to the note in question. If he did this with an honest intent and purpose, merely as a memorandum of the transaction and with the intent to inform the state examiner upon the examination of the bank of the nature and purpose of the transaction, then, obviously, there was no intent on his part that the paper should be exhibited to the examiner with intent to deceive him. If at the time the examination was made, Alcock determined to deceive the deputy examiner and exhibited the note to him as the actual note of Margaret Hood, and suppressed the actual truth of the transaction, so as to render him guilty of a violation of the statute, Rother would not be guilty unless he was a party to the criminal conduct practiced. We are wholly agreed that the giving of this instruction was error, prejudicial to the defendant.

(3) As regards the sufficiency of the evidence, it is sufficient to say that the court has given careful consideration to the assignments of error presenting this question; and while the evidence is not such that it can be said that defendant's guilt is so clearly established that the errors committed upon the trial would be errors without prejudice; and while some members of the court entertain grave doubts as to the legal sufficiency of the evidence, a majority of the court are of the mind that there is sufficient substantial evidence tending to establish the material averments of the indictment so as to make it a question of fact for the jury to determine whether the defendant did or did not commit the crime with which he is charged.

It follows from what has been said that the judgment appealed from must be reversed and the cause remanded for further proceedings not inconsistent with this opinion. It is so ordered.

NUESSLE, Ch. J., and BIRDZELL, BURKE, JJ., and ENGLERT, Dist. J., concur.

Mr. Justice BURR, disqualified, did not participate, Honorable M. J. ENGLERT, Judge of the First Judicial District, sitting in his stead.