**UNITED STATES v. STREWL et al.**
**No. 78.**

Circuit Court of Appeals, Second Circuit.
Oct. 17, 1938.

Joseph G. M. Browne, of Brooklyn, N. Y., for appellants.

Abraham E. Gold, of Binghamton, N. Y., for the United States.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The first convictions from which the defendants appeal were under an indictment for posting four letters, demanding ransom for a kidnapped person. Section 338a, Title 18, U.S.Code, 18 U.S.C.A. § 338a. This was in five counts: the first, for a conspiracy; the second for posting a

letter in Albany, and the third, fourth and fifth, each for posting one in the Southern District of New York; all in 1933. This indictment was found in 1937, more than three years after the letters had been posted, and was therefore barred by the statute of limitations, § 582, Title 18, U.S.Code, 18 U.S.C.A. § 582. However, an earlier indictment in ipsissimis verbis had been found in 1934, naming only three of the seven appellants—Strewl, Oley and Geary—to whom had been added four fictitious names: John Doe, James Doe, Thomas Doe and Richard Doe. Before the 1937 indictment was found the district attorney obtained an ex parte order from the district judge directing him to present his evidence to the grand jury and to obtain another indictment. The petition on which this order passed, alleged that at the time when the first indictment was found, the names of the "other defendants" were not known, and that they could not then be "identified"; but that during January, 1937, the prosecution had discovered ten other persons, who were participants in the crime, and for this reason the 1934 indictment had become "insufficient". All the defendants, new and old, were tried upon the 1937 indictment, and all were convicted on all five counts. The jury was allowed to find as to each except Strewl, that he had been a fugitive from justice until shortly before the indictment was found, and it must be understood that they did so find. Hence as to them the indictment did not need the assistance of §§ 587 and 589 of Title 18, U.S.Code, 18 U.S.C.A. §§ 587, 589, being valid of itself under § 583, Title 18, U.S.Code, 18 U.S.C.A. § 583. Strewl argued that as to him the 1937 indictment was barred by the statute, because § 587 of Title 18, U.S.Code, 18 U.S.C.A. § 587, on which the prosecution relied, did not cover the situation: he asserted that the 1934 indictment had been neither "defective", nor "insufficient", and that the condition upon the operation of § 587 had not therefore been fulfilled. The judge overruled this objection and sentenced all the defendants to prison for two years and fined them $10,000 under the conspiracy count; to twenty years, under the second count; and to twelve years, under each of the third, fourth and fifth counts. These sentences were consecutive, so that the cumulative sentence was 58 years.

The second indictment was also found in 1937 and was for transporting a kidnapped person: it was dismissed as to Strewl. Since, as we have said, the jury was directed to acquit the other defendants, unless they had been fugitives from justice, there is no reason to disturb their convictions under this indictment. Their appeal, so far as concerns their imprisonment, need not be further considered, because they were each sentenced to 77 years, under the kidnapping indictment, to be served concurrently with the sentences under the ransom indictment, and they can therefore have no interest in the reversal of their conviction under the ransom indictment, except as to the fine of $10,000 under the first count. The only points before us are, first, whether the ransom indictment of 1937 was too late, and whether, if so, the convictions under it must be reversed: and second, whether, if not, which, if any, of its counts did not well lie in the Northern District of New York.

Section 587 of Title 18 was enacted on May 10, 1934, after the crimes at bar had been committed and the first ransom indictment had been found, but before the statutory period of limitation had run. Although no case has yet arisen under it, its prime purpose is clear; it is to prevent the failure of a prosecution because an indictment, found in season, proves insufficient in law. Its normal occasion will be after the defendant succeeds on demurrer, or motion to dismiss: if the error can be corrected, it will not discharge the accused. In such cases the correctness of the ruling which "finds" the indictment bad, certainly ought not to be examined again, for in most cases the prosecution cannot appeal, and the scope of the section would be greatly impaired, if it could be used only when the judge who dismissed the indictment was right. Whether the prosecution must await a move by a defendant, or whether, as here, he may move on his own initiative for a finding that the indictment is "defective or insufficient," we need not now decide; but even if he may, the finding of the court cannot be similarly conclusive—at least not in a case like that at bar. The judge found the 1934 indictment "insufficient" for no other reason than that the prosecution had discovered new principals to the crime; as it stood, it was concededly perfect against Strewl, Oley and Geary—not a syllable of it needed change. The consequence of his finding was therefore to allow ten new defendants to be indicted after the statute had run in

their favor, or at least would have run had they not been fugitives. Section 587 certainly never meant to forfeit an immunity once gained: its purpose was, not to extend the period of limitation against persons not indicted, but to prevent the escape of those who had been seasonably indicted, but whose indictment was bad because of some corrigible mistake.

We cannot therefore agree that the 1937 indictment was good against any of the defendants, except as they had been fugitives; and as Strewl was not a fugitive, he could invoke the bar. Notwithstanding this, we do not think that his conviction was wrong for the following reasons. The 1934 indictment was not quashed by the indictment of 1937. The order which "found" it "insufficient" did not attempt to dismiss it; and although a second indictment is often said to "supersede" the first, it does not dispose of it without an express quashal. It is true that if the defendant has pleaded to the first indictment, the court will ordinarily quash it to insure his protection from double jeopardy (United States v. Maloney, Fed.Cas. No. 15,-713a); but it does not here appear that Strewl had ever pleaded to the first indictment, and if he had, it would make no difference, because in any event an order was necessary. As things were, both indictments stood, and the prosecution was free to elect on which to proceed. Thompson v. United States, 9 Cir., 202 F. 401, 404, 47 L.R.A.,N.S., 206. It selected the wrong indictment, and until very recent times such a mistake would have been fatal; but the amendment of 1919 to § 391 of Title 28, U.S.Code, 28 U.S.C.A. § 391, was amply broad to meet any such error. It directs us to "give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties". The error did not affect Strewl's "substantial rights" in the slightest degree: it was the merest formality whether the proceedings should be carried on under one document or the other, or on which paper the formal entries should be made. Indeed, this would have been equally true, even if the 1934 indictment had been mistakenly quashed as a condition to finding the 1937 indictment. For these reasons we hold that the conviction of all the defendants upon the first and second counts of that indictment was valid.

On the other hand, we think that counts three, four and five were invalid, and that the conviction must be pro tanto reversed as to Strewl. It is true that these did not allege where the letters were posted, but the places appeared in the conspiracy count, and the indictment may be read as a whole. Section 338a of Title 18, in its original form, and as it stood when the letters were posted (47 Stat. 649), made posting a letter the only crime; it was not until the amendment of 1935 (49 Stat. 427) that the delivery of the letter at its destination was added as a separate crime. The difference is fundamental. Salinger v. Loisel, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989, did indeed hold that an indictment lay under § 338, 18 U.S.C.A., in the place where the letter was delivered; but only because the section specifically so provided at the time. In United States v. Stever, 222 U.S. 167, 32 S.Ct. 51, 56 L.Ed. 145, on the other hand, even the prosecution conceded that the original section—similar to § 338a as it was in 1933—covered posting alone, and that the indictment must be in the place of posting. For that reason the only issue in that case was whether the "Lottery Act" also covered the fraud, for that section included both posting and delivery. Under the original form of § 338 Judge Severens ruled in United States v. Sauer, D.C., 88 F. 249, that the district of the posting was the only proper one. See, also, United States v. Conrad, C.C., 59 F. 458. Hence when these offenses were committed they were complete as soon as the letters were posted and Strewl could have defeated counts three, four and five in either the 1934 or 1937 indictment by timely objection. Nor did the amendment of 1935 to § 338a cure this defect: unless it be construed prospectively it violates the Sixth Amendment, U.S.C.A.Const. Amend. 6, for it forces the accused to trial before a jury in a district other than that in which the crime was committed.

Strewl challenged the validity of counts three, four and five for this reason, but not until the prosecution's case had been closed, and the argument is that this delay forfeited his privilege. We think not. We do not say that the District Court for the Northern District of New York had as little jurisdiction over a crime committed in the Southern District, as though that were the territory of another sovereign: Section 41(2) of Title 28, U.S.Code, 28 U.

S.C.A. § 41(2) gave it jurisdiction generally, over all "crimes and offenses cognizable under the authority of the United States"; and even if Clause 3 of § 2 of Article 3 of the Constitution, U.S.C.A.Const. art. 3, § 2, cl. 3, be treated as defining jurisdiction which we do not suggest—the indictments at bar were found in the same state where the crimes were committed, which is all that that clause requires. However, although we therefore leave open any question of jurisdiction, strictly speaking, the Sixth Amendment, U.S.C.A.Const. Amend. 6, forbad prosecution in the Northern District, conferring upon the accused, as it did, the privilege of trial before a jury of the district where the crime was committed. That privilege may indeed be surrendered, because the privilege of any trial by jury whatever may be surrendered. Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854, 70 A.L.R. 263. But it does not follow that a failure to object in limine, or until after the prosecution has put in its evidence, forfeited it. That is indeed the general doctrine as to formal defects like multifariousness (Connors v. United States, 158 U.S. 408, 411, 15 S.Ct. 951, 39 L.Ed. 1033; Durland v. United States, 161 U.S. 306, 315, 16 S.Ct. 508, 40 L.Ed. 709); but in such cases the actual consent of the accused or his counsel is not necessary. The privilege of a trial before a jury of the vicinage is more jealously preserved than that of being tried upon a perfect indictment. It is true that under rule 38(d) of the Rules of Civil Procedure for District Courts, 28 U.S.C.A. following section 723c, he who does not seasonably demand a jury may not have one, whether he consents or not; and it is also true that the Seventh Amendment, U.S.C.A.Const. Amend. 7, protects that privilege, just as the Sixth protects it in a criminal case. But in Patton v. United States, supra, page 312, 50 S.Ct. page 263, it was said that among other conditions the accused must personally consent to a jury of less than twelve, and although this was not necessary to the disposition of the appeal it has been taken as authoritative. United States v. Dubrin, 2 Cir., 93 F.2d 499, 505; Rees v. United States, 4 Cir., 95 F.2d 784, 790. At least so far as it required some actual consent by the accused or his counsel, as contrasted with forfeiture by delay, it seems to us that it should be so taken. Trial by jury, certainly for the graver crimes, has a high place in our traditions; around it cluster many memories of freedom won at large cost; its surrender is not to be lightly imputed to the accused. The interest at stake in a jury of twelve is no greater than that in a jury of the vicinage—especially in the smaller centers of population where a man may be known and where he is at home: of the two it is indeed the less important, and if consent is necessary for the surrender of one, consent is equally necessary for the other. It follows that the convictions upon counts three, four and five of the ransom indictment must be reversed as to Strewl, although the only effect of this is to reduce his sentence from 58 to 22 years.

Sentence of Strewl reduced from 58 to 22 years: sentences otherwise affirmed.