John Lee GABRIEL, Appellant,

v.

UNITED STATES of America, Appellee.

No. 20528.

United States Court of Appeals Ninth Circuit.

Oct. 3, 1966.

Charles Garner, Mendoza, Foley & Garner, Las Vegas, Nev., for appellant.

John W. Bonner, U. S. Atty., Robert S. Linnell, Asst. U. S. Atty., Las Vegas, Nev., for appellee.

Before MERRILL, BROWNING and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

Appellant, John Lee Gabriel, and one Frank V. Esposito were indicted for receiving, concealing, selling, and facilitating the transportation, concealment, and sale of 2,020 grams of márihuana, in violation of 21 U.S.C. § 176a (Count I). Gabriel was also indicted on two additional counts of receiving, concealing, and facilitating the transportation and concealment of a three-gram vial of marihuana (Count II) and a marihuana cigarette (Count III). Esposito pleaded guilty. Gabriel, after a jury trial, was convicted on Counts I and II and acquitted on Count III, and brings this appeal.

Gabriel was sentenced to concurrent seven-year prison terms on each of the two counts on which he was convicted, and the record discloses no reason to think that appellant was prejudiced by a trial on multiple counts or that the sentence was greater than it would have been in separate trials. We therefore confine our examination to the regularity of the conviction on Count II.[1]

The evidence, stated most favorably to the Government, shows that Richard Salmi, a Federal Narcotics Bureau agent, was working "under cover" in Las Vegas, Nevada, in September of 1964. He met Esposito and attempted to purchase narcotics from or through him. In a conversation with Esposito in midafternoon on September 2, Esposito remarked that a person named "John" had driven his little sports car, with Esposito following in his own car, on a prior occasion when they had left town and returned with six pounds of marihuana. In response to an inquiry by Salmi concerning the possibility of a purchase, Esposito said that he would check with "John," with whom he was to meet at the Thunderbird Hotel at six o'clock that evening.

At 6:00 p.m. Salmi, under the surveillance of Detective Geisbauer of the Clark County, Nevada, Sheriff's Department, entered the hotel, where from a distance Salmi observed Gabriel and Esposito talking briefly together. After Gabriel left, Esposito informed Salmi that he could have six pounds of marihuana that evening after ten o'clock, and that it was "John" with whom he had been talking and who had the marihuana. Geisbauer testified that he had overheard part of the conversation between Gabriel and Esposito, that Esposito had asked "Well, when can you get it?", and that Gabriel replied "It will be a day or two" and shortly thereafter left the hotel area

---

1. Browning v. United States, 9 Cir., 1966, 366 F.2d 420 (decided September 8, 1966). See Cohen v. United States, 9 Cir., 1962, 297 F.2d 760, and authorities there cited in Note 1.

in a blue Austin Healy, a small foreign sports car.

Salmi met Esposito at the hotel at 10:00 that evening and, in Esposito's automobile, was driven to the Country Club Apartments in Las Vegas, an apartment complex where Gabriel lived. Esposito was there given $500 in pre-recorded government funds and disappeared into the darkness in the direction of the apartments. He returned shortly with six pounds of marihuana, which he gave to Salmi in return for an additional $50 in pre-recorded funds.

Salmi and Esposito went to the apartment area on two other occasions. On September 11, a blue Austin Healy was parked there, and Esposito commented "Yes, that is John's little car, the one he makes the runs in." On September 13, the car again being parked there, Esposito observed of some damage to a fender "Yes, that happened when John stacked it up in Mexico, when the car was in an accident in Mexico."

On the basis of this information Salmi prepared an affidavit, recited in the margin,[2] and a warrant for appellant's arrest issued. The warrant was served on September 16 in the parking lot of the Country Club Apartments, where the arresting officers found Gabriel and another sitting in Gabriel's car, apparently working on it. Gabriel was on the driver's side. After arresting Gabriel, the officers searched the car and found a three-gram vial of marihuana under the driver's seat and a half-smoked marihuana cigarette under the floor mat on the passenger's side.

Gabriel assigns as error, *inter alia*, the reception of the three-gram vial into evidence at the trial. He argues that the vial was the product of an illegal search because the arrest warrant was issued on the basis of an affidavit which did not show probable cause to believe that appellant had committed any crime.

■ In approaching the problem of the validity of an arrest warrant, we are to remember that the underlying affidavits are to be interpreted in a common sense and realistic, not a hypertechnical, manner, and that in doubtful or marginal cases the doubt is to be resolved in favor of upholding the warrant.[3] A warrant is to be sustained if there was "substantial basis" for the decision of the magistrate or commissioner that probable cause existed,[4] and the very fact that the magistrate found probable cause militates in favor of upholding the warrant upon judicial review.[5]

■ It is established that, where a warrant is issued on the basis of an affidavit, the probable cause or reasonable grounds necessary may be found in whole or in part in hearsay information,[6] at least where the affidavits give some indication of the "underlying circumstances" which show the basis of the informant's conclusions and the basis upon which the affiant concludes that the

2. "1. On September 2, 1964, defendant Frank V. Esposito identified defendant John Doe, also known as John Lee Gabriel, to your complainant as being one through whom marihuana could be purchased.
"2. Your complainant observed defendant Frank V. Esposito approach the building containing defendant John Doe's, also known as John Lee Gabriel, apartment.
"3. Upon his emergence from said building, defendant Frank V. Esposito sold said marihuana to your complainant."
The court below held that the recitals were "more than ample probable cause for a warrant of arrest."

3. United States v. Ventresca, 1965, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684; Jones v. United States, 1960, 362 U.S. 257, 270, 80 S.Ct. 725, 4 L.Ed.2d 697; Travis v. United States, 9 Cir., 1966, 362 F.2d 477. The same standards apply under the Fourth and Fourteenth Amendments whether a state or federal warrant for arrest or for search is being considered, Aguilar v. State of Texas, 1964, 378 U.S. 109, 110, 112 n. 3, 84 S.Ct. 1509, 12 L.Ed.2d 723.

4. Jones v. United States, supra n. 3; Aguilar v. State of Texas, supra n. 3.

5. Porter v. United States, 9 Cir., 1964, 335 F.2d 602, 605, cert. denied, 379 U.S. 983, 85 S.Ct. 695, 13 L.Ed.2d 574.

6. Jones v. United States, supra n. 3.

informant is reliable.[7] The affidavits may show that the informant has previously given reliable information[8] or that in the particular situation he was probably telling the truth.[9]

 The affidavit here did contain hearsay information from Esposito, a source who, so far as the affidavit showed, had not previously given information. The question, then, is whether the affidavit disclosed circumstances which would indicate that Esposito was telling the truth. We think it did.

The affidavit stated in substance that the government agent had arranged and successfully completed a purchase of narcotics from Esposito and the appellant. Eposito's hearsay statement was that of a co-actor in the course of a joint criminal enterprise. It is difficult to imagine why Esposito would wish to be inaccurate about his source of marihuana when speaking to a prospective buyer. Furthermore, Esposito presumably knew that in agreeing to sell and selling narcotics, he was subjecting himself to the danger of heavy mandatory penalties. The completion of the transaction itself supports the veracity of Esposito's statement. The law recognizes the probable reliability of such admissions, and Esposito's statement was in fact received against appellant in his trial under Count I. In the circumstances we think that the Commissioner could reasonably conclude that Esposito's statement regarding appellant was probably true. And this, we think constitutes the necessary "substantial basis" for the issuance of the warrant, Aguilar v. State of Texas, supra n. 3; Jones v. United States, supra n. 3.

 Gabriel further argues as to Count II that no direct evidence of his possession of the three-gram vial of marihuana was introduced and that because of this the evidence was not sufficient to give rise to the statutory presumption of illegal importation. This contention is without merit. All that is needed is a showing that the narcotics are under the control or dominion of the accused, and this showing may be made by the introduction of circumstantial evidence. Cellino v. United States, 9 Cir., 1960, 276 F.2d 941, 945. The record discloses evidence sufficient to allow the jury to find that the three-gram vial was found behind the driver's seat of Gabriel's car just after Gabriel was arrested from that seat. We think that these circumstances more than adequately establish such dominion and control as the statutory presumption requires.

Since we hold that there was adequate probable cause for arrest shown in the affidavit supporting the warrant, and that the evidence found as a result of the search incident to the arrest was adequate to establish possession in Gabriel, we find no merit in his further contention that the verdict on Count II was contrary to the evidence. This holding makes unnecessary a consideration of purported errors in the Count I conviction.

Judgment affirmed.

7. United States v. Ventresca, supra n. 3; Aguilar v. State of Texas, supra n. 3; Travis v. United States, supra n. 3.

8. Jones v. United States, supra n. 3.

9. Travis v. United States, supra n. 3; cf. Rodgers v. United States, 9 Cir., 1959, 267 F.2d 79, 84–88.