**Mildred HOWARD, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**
**No. 20558.**

United States Court of Appeals
Ninth Circuit.
Jan. 30, 1967.

Joseph L. Armijo, Jr., Torrance, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief, Crim. Div., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief Crim. Div., Stephen D. Miller, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES and DUNIWAY, Circuit Judges, and McNICHOLS, District Judge.

McNICHOLS, District Judge.

This appeal presents a somewhat novel twist on an old Constitutional question. We are obliged to determine, on a somewhat unusual set of facts, whether or not a retrial of the appellant after a mistrial where the jury failed to agree, is violative of the double jeopardy or due process clauses of the Fifth Amendment.

The appellant was engaged in the business of assisting taxpayers in the preparation of federal income tax returns. On March 31, 1965, the grand jury for the Southern District of California, Central Division, returned a twenty count indictment, No. 34766 (hereinafter referred to as the first indictment). The various counts of the said indictment each dealt with the tax return of a different private individual. It was charged in each instance that the appellant willfully and knowingly aided and assisted the prep-

aration and presentation of federal income tax returns wherein false and fraudulent claims for deductions and exemptions were contained,[1] all in violation of 26 U.S.C. § 7206(2).[2]

May 24, 1965, trial commenced on the first indictment. At the close of the government's case in chief, eight counts were dismissed on motion of the government and on these counts a judgment of acquittal was entered.[3] The jury was unable to agree on the remaining twelve counts submitted and a mistrial was declared on May 26, 1965.[4] A retrial was promptly scheduled for June 28, 1965.

On June 9, 1965, the government procured a new indictment, No. 35008 (hereinafter referred to as the second indictment). The second indictment contained fifteen counts of violation of 26 U.S.C. § 7206(2). Counts 1 through 8 of the second indictment charged the same offenses [5] as were contained in counts 2, 3, 4, 5, 6, 8, 9 and 10 of the first indictment and were eight of the twelve counts on which the jury was unable to agree. Counts 9 through 15 of the second indictment were new charges relating to the tax returns of individuals different from those set out in the first indictment.

In other words, the second indictment contained eight of the twelve counts which had been the subject of the mistrial and for which a retrial had been set, together with seven new and different counts. All fifteen counts of the second indictment charged the claiming of false dependency exemptions.

Trial of the second indictment was then set for trial on June 28, 1966, the

---

1. It is to be noted that in the first indictment it was alleged that both false deductions and false exemptions (dependents) were included.

2. "Any person who—
 \* \* \* \* \*
 (2) Aid or assistance.—Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not

such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document;
 \* \* \* \* \*
 shall be guilty of a felony \* \* \*."

3. Counts 1, 7, 11, 13, 14, 16, 17 and 19 were so dismissed.

4. Counts 2, 3, 4, 5, 6, 8, 9, 10, 12, and 15 and 20 were so mistrialed.

5. Except that only the false claim of dependency was made, the claim of false deductions was not included.

date previously set for the retrial of the first indictment.

Appellant made prompt and timely Motion to Dismiss the second indictment. Two grounds for dismissal were set forth:

"1. That the defendant has been once in jeopardy of conviction of the offenses charged therein, in the case of UNITED STATES vs. MILDRED HOWARD in this court, which was terminated on May 28, 1965.

"2. That the filing of this superseding indictment violates the fundamental fairness guaranteed a defendant in criminal trials by the Due Process Clause of the Fifth Amendment."

Briefs were filed on both sides and the Motion argued on June 21, 1965. The Motion was denied by the Court and the cause went to trial on the second indictment on June 28, 1965 with the first indictment being held in abeyance.

On July 2, 1965, the jury returned guilty verdicts on counts 1 through 6 and counts 10, 11, 12, 13 and 15 of the second indictment.[6] Not guilty verdicts were reached on Counts 7, 8, and 9. The government dismissed on count 14.

Sentence was imposed on August 9, 1965 and on Motion of the government the first indictment was dismissed. Concurrent sentences of three years on each count were imposed. The Court further provided that the defendant be confined in a jail type institution for a period of six months and that the execution of the remainder of the sentence be suspended and the defendant be placed on probation for a period of three years on the usual conditions.

Appellant, in this appeal, has limited herself to the Constitutional questions raised in the attempt to dismiss the second indictment. No other legal or procedural errors in the conduct or result of the second trial are specified and the record of proceedings of that trial is not before us. Thusly is the issue clearly and narrowly presented: Do either the double jeopardy[7] or due process[8] clauses of the Fifth Amendment militate against the procedure illuminated by the facts?

██ The ancient doctrine prohibiting double jeopardy comes to us from the common law of England and has been incorporated in the United States Constitution by way of the Bill of Rights[9] and into the Constitutions of all but five states. Concisely stated the prohibition bars a second prosecution of the same individual for the same offense.

"The common law not only prohibited of a second punishment for the same offence, but it went further and forbid a second trial for the same offence, whether the accused had suffered punishment or not, * * *." Ex parte Lange, 18 Wall. 163, 169, 21 L.Ed. 872 (1873).

██ Ordinarily double jeopardy at the common law attached when the jury was sworn to try the defendant initially. Himmelfarb v. United States, C.A. 9 (1949), 175 F.2d 924, Cert. denied, 70 S. Ct. 103, 338 U.S. 860, 94 L.Ed. 527.

However, since an early date in this country (1824) exceptions to the strict ban against a second trial have been established. Justice Story in United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165, taught:

"We are of the opinion, that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defence. We think, that in all cases of this nature, the law has invested courts of justice with author-

---

6. Guilty verdicts were thus reached on 6 of 8 counts which were also contained in the first indictment and on 5 of 7 new counts contained only in the second indictment.

7. "* * * nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; * * *."

8. "* * * nor be deprived of life, liberty, or property, without due process of law * * *."

9. See Note 8, supra.

ity to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all of the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office. We are aware, that there is some diversity of opinion and practice on this subject, in the American courts; but, after weighing the question with due deliberation we are of the opinion, that such a discharge constitutes no bar to further proceedings, and gives no right of exemption to the prisoner from being again put upon trial. * * * "

■ An exception to the double jeopardy prohibition exists where an unforeseeable circumstance forces a termination of the trial without verdict. The inability of the jury to agree, after proper deliberation, is such a circumstance. United States v. Perez, supra; Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429; Keerl v. State of Montana, 213 U.S. 135, 29 S.Ct. 469, 53 L.Ed. 734; Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974; Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901; United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448. The Federal Rules of Criminal Procedure, Rule 29, authorize the ordering of a new trial where the jury has failed to reach a verdict.

■ A second exception is found in the line of cases where the conviction of the accused is reversed on Motion for a New Trial or on appeal. United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L. Ed. 300 (1896).

"At common law a convicted person could not obtain a new trial by appeal except in certain narrow instances. As this harsh rule was discarded courts and legislatures provided that if a defendant obtained the reversal of a conviction by his own appeal he could be tried again for the same offense. Most courts regarded the new trial as a second jeopardy but justified this on the ground that the appellant had 'waived' his plea of former jeopardy by asking that the conviction be set aside." Green v. United States, 355 U.S. 184, 189, 78 S.Ct. 221, 224, 2 L.Ed.2d 199.

Appellant relies heavily on the authority of Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100, wherein a plea of double jeopardy was sustained. Downum was indicted on six counts for federal offenses. Trial was commenced, and after each side announced ready, a jury was impaneled. The government then advised the Court that two important witnesses had not been located and on this basis obtained a discharge of the jury. Prior to impaneling the jury, the United States Attorney knew, or should have known, that the key witnesses had not been located. The Supreme Court upheld the plea of double jeopardy raised at an attempted second trial. Downum does not provide the appellant the solace sought for. Indeed, the Court in Downum recognized occasions where a second trial may be properly had "although the jury impaneled for the first trial was discharged without reaching a verdict and without the defendant's consent", the classical example cited by the Court being a mistrial brought about by the inability of the jury to agree on a verdict.

That Downum was not a departure from established precedents and is to be narrowly construed on its particular facts is made clear in United States v. Tateo,

supra, decided a year later. The following language of *Tateo* supporting the holding in *Ball,* supra, removes any doubt on this score:

"The Fifth Amendment provides that no 'person [shall] be subject for the same offence to be twice put in jeopardy of life or limb * * *.' The principle that this provision does not preclude the Government's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction is a well-established part of our constitutional jurisprudence. In this respect we differ from the practice obtaining in England. The rule in this country was explicitly stated in United States v. Ball, 163 U.S. 662, 671–672 [16 S.Ct. 1192, 1195, 41 L.Ed. 300], a case in which defendants were reindicted after this Court had found the original indictment to be defective. It has been followed in a variety of circumstances; see, e. g., Stroud v. United States, 251 U.S. 15 [40 S.Ct. 50, 64 L.Ed. 103] (after conviction reversed because of confession of error) ; Bryan v. United States, 338 U.S. 552 [70 S.Ct. 317, 94 L.Ed. 335] (after conviction reversed because of insufficient evidence) ; Forman v. United States, 361 U.S. 416 [80 S.Ct. 481, 4 L.Ed.2d 412] (after original conviction reversed for error in instructions to the jury).

" * * *

"Downum v. United States, 372 U.S. 734 [83 S.Ct. 1033, 10 L.Ed.2d 100], is in no way inconsistent with permitting a retrial here. There the Court held that when a jury is discharged because the prosecution is not ready to go forward with its case, the accused may not then be tried before another jury. The opinion recognized, however, that there are circumstances in which a mistrial does not preclude a second trial, * *.' "

■■ The rationale of all these precedents would seem to be that in the event of a mistrial for "manifest neces-

sity" the retrial is a continuing one which does not do violation to the Constitutional right against a second prosecution; while in the reversal upon appeal cases, the accused is said to have waived the Constitutional protection. In either situation the defense of double jeopardy is therefore unavailing.

■ The historically created policies sought to be served by the double jeopardy provisions written into the Constitutions of our various American jurisdictions are well known. For the purpose of this case, the only pertinent consideration is the policy of protecting the accused from harassment and from the physical, psychological and financial burden of successive prosecutions.[10]

■ But balanced against this most worthy objective is the countervailing social interest in preventing the guilty from escaping just punishment. This latter consideration must not be permitted such emphasis as to deprive an accused of the Constitutional safeguards, however, where potential harassment is at a minimum and unfairness to the defendant not persuasive, and where the probability of an improper acquittal is evident, the interest of society in convicting the guilty is entitled to great weight.

In the case at bar, appellant makes no showing, and indeed does not contend, that the trial judge erred in discharging the jury in the first trial and in entering the Order of Mistrial. Clearly, then, appellant could not have successfully urged the defense of double jeopardy at a retrial of the first indictment.

This is not, however, dispositive of the case. Appellant argues that the procedure followed by the government in securing a new indictment containing some of the counts on which mistrial was granted together with new counts alleging different offenses, and forcing the defendant to go to trial on this new indictment, takes the matter out of the established exceptions permitting a sec-

10. The other protections being: prevention of multiple punishments for a single offense and protection of citizens through the jury system from unpopular laws.

ond prosecution. It is appellant's position that the appellee was limited to a retrial of the first indictment and that any other course was violative of the defendant's Constitutional rights. The thrust of this argument is toward a narrow construction of the exceptions permitting retrial after mistrial.

Counsel for the appellant and the Assistant United States Attorney appearing for the appellee advised the Court that no reported case exactly in point had been uncovered. The Court has found no specific controlling precedent. To this extent we break new ground.

Our previous dissection of the first and second indictments discloses that eight counts were carried over from the first indictment to the second. Under the first exception to the jeopardy policy, it is readily apparent that there was no Constitutional bar to retrial of these eight counts. The other seven counts, of the second indictment, were new, and therefore did not of themselves constitute a second jeopardy. Considered alone, it must be said that the second indictment contained no counts violative of double jeopardy.

█ Did the procedure here followed whereby the two sets of counts were joined into a new and second indictment somehow change an otherwise proper indictment into one which constituted double jeopardy? We think not

We have said above that, for the purpose of this case, the policy of the Constitutional ban is to protect this appellant from harassment and from physical, psychological and financial burdens occasioned by a second prosecution. As to the first eight counts of the second indictment, there was no undue harassment, as, under the exception to the double jeopardy rule, this retrial was proper and to be expected. As to the seven new counts, she had not been tried

thereon and harassment as such did not exist. Clearly the government could have elected to try the appellant on the first indictment, containing the identical eight counts, and could thereafter have indicted and tried her on the seven counts newly added. In fact, on the authority of Rule 13, Federal Rules of Criminal Procedure,[11] the Court could have joined the first indictment with a new indictment on the seven additional counts and proceeded to try both indictments. In legal effect this is what actually occurred. Unless one say that any prosecution is an harassment, there cannot be here demonstrated such an harassment by the government of this citizen as to cause a court to say that the procedure followed constituted double jeopardy.

█ All criminal trials must, to some extent, be a burden, financially, physically and psychologically on an accused. Only when such hardships are magnified or added to by some impropriety of the prosecution can such burden come within the purview of the Constitutional protection. Here the conceded financial, mental and physical woes of the defendant, as far as the first eight counts of the second indictment are concerned, were not engendered by any culpable activity of the government. The newly charged seven counts constituted the usual and regular burden placed on an accused indicted by a grand jury and seeking vindication. Actually, had separate trials been conducted a greater harassment, as well as increased financial, mental and physical problems might well have been incurred by the appellant.

We take note of the fact that there is no contention in this appeal that the jury's determination of guilt was not based on sufficient evidence.

We are unwilling, under the exact facts here presented, to find that the procedure followed was in contravention of the protection afforded by the double

---

11. "The court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indict- ment or information. The procedure shall be the same as if the prosecution were under such single indictment or informa- tion."

jeopardy provision of the Fifth Amendment.

Can appellant prevail on the alternate theory that the prosecution practice herein demonstrated violated due process? We think not.

A definitive statement of what constitutes "due process of law" is somewhat elusive.

> "A widely accepted definition is that of Judge Cooley, to the effect that due process of law in each particular case means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs." 16A C.J.S. Constitutional Law § 567, p. 538.

 The present concept of due process stems from our American ideal of fairness in the treatment of all. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884. Due process is denied where the procedure tends to shock the sense of fair play. Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911.

That appellant bases her due process argument on the thesis of unfairness and lack of fair play is evident from a perusal of her brief. Under the "Due Process" heading of the brief [12] appears the capitalized heading:

> "GOVERNMENT, IN THE PROSECUTION OF APPELLANT, RAN AFOUL OF THE CONSTITUTIONAL STANDARD OF FUNDAMENTAL FAIRNESS IMPOSED ON THE GOVERNMENT BY THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT."

Later she says: "That it is fundamentally unfair for the government to put citizens through the expense, embarrassment, strain and anxiety of multiple prosecutions is beyond question." [13]

And later: "Because the procedure is fundamentally unfair, and therefore protected by the due process clause, * * *." [14]

 The yardstick of fair treatment to the accused in this cause is therefore to be applied to determine the validity of her contention that the second trial, on a different indictment, violated due process. When the question is viewed in this light, what we have heretofore said in regard to the question of harassment and trial burdens on this accused become equally applicable here. She was retried on eight offenses after the first trial had been properly and legally aborted. She was also obliged to defend seven charges which she had never previously faced. All arose from identical types of alleged violations of the same statute. Appellant has demonstrated no such unfair treatment as would shock the sense of fair play. That she had apparently so conducted herself as to be answerable for a large number of alleged counts is not attributable to any unfairness on the part of the government.

Appellant complains with some heat that the "sheer number of counts alone created an unfavorable impression on the jury". [15]

 The short answer to this objection is that the use of multicount indictments charging offenses of similar character is a sanctioned practice. [16]

Under this specific factual situation we hold that the Fifth Amendment guarantee of due process of law was not abridged.

At oral argument, and for the first time, the very diligent, and indeed dedicated, counsel for the appellant urged that this Court exercise its inherent power to supervise the enforcement of law to strike down the claimed unfair practice followed by the United States Attorney in this case. Assuming, for the purpose of argument that such power

---

12. Page 13 of appellant's opening brief.

13. Page 13, supra.

14. Page 13, supra.

15. Page 15, appellant's opening brief.

16. Rule 8, Rules of Criminal Procedure.

**302**

exists, what we have discussed above leaves us with an abiding conviction that under the special facts of this case the procedure followed was not offensive to the judicial conscience and no occasion for the exercise of extraordinary powers is called for.

Affirmed.

DUNIWAY, Circuit Judge:

I concur in the result, but I think it unnecessary that we consider the constitutional question raised by appellant.

The rule is well established, both in this circuit and in the Supreme Court, that where there is a conviction on several counts and the sentences are concurrent, and where there is no question as to the validity of the conviction on certain of the counts, attacks on other counts need not be considered. One of the latest cases in this circuit is Gabriel v. United States, 9 Cir., 1966, 366 F.2d 726, 727. I think that this rule is applicable here.

1. I find nothing in the Constitution or the federal statutes which would have prevented the United States from obtaining a second indictment which would include only counts 9 through 15 of the indictment that is before us. See 4 Wharton, Criminal Law and Procedure 520, Thompson v. United States, 9 Cir., 1913, 202 F. 401, 404; United States v. Strewl, 2 Cir., 1938, 99 F.2d 474, 477. There could then have been two trials. One would be a re-trial on the old indictment, and the other would be a separate trial on the new indictment.

2. Under the Federal Rules of Criminal Procedure the trial court has wide discretion to consolidate separate indictments for trial. (See Rule 13) This rule authorizes the court to order two indictments tried together if the offenses could have been joined in a single indictment. Under Rule 8 the offenses here could have been so joined because they are "of the same or similar character." Consequently, if there had been a new indictment which contained only counts 9 through 15 of the second indictment in this case, the court could have ordered it tried along with the re-trial of the first indictment, thus placing appellant in the same position as that in which she found herself at the second trial.

3. This is a case in which the evidence relating to each count was pointed specifically to that count and I do not think it could be claimed—indeed, it is not claimed—that the jury was confused in performing its duty to render a separate verdict on each count based only upon the evidence relating to that count. I think the jury demonstrated that it was not confused. It returned verdicts of guilty on counts 1 through 6 and not guilty on counts 7 and 8, these being the counts that had been included in the first indictment. It returned verdicts of guilty on counts 10, 11, 12, 13 and 15, these being some of the new counts, and not guilty on count 9, which is also one of the new counts.

It follows from the foregoing that the verdicts of guilty on counts 10, 11, 12, 13 and 15 are valid and are not subject to attack on the ground of double jeopardy, since appellant was not charged with these offenses in the first indictment. All sentences were concurrent. Therefore, we need not consider the validity of the conviction on counts 1 through 6.