Alfred **WALKER**, Petitioner-Appellant,

v.

Louis S. **NELSON**, Warden California State Prison at San Quentin, and California Adult Authority, Respondents-Appellees.

No. 71–2442.

United States Court of Appeals, Ninth Circuit.

Oct. 24, 1972.

**452**

Kenneth Drexler (argued), J. Thomas Rosch, of McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for petitioner-appellant.

Charles R. B. Kirk, Deputy Atty. Gen. (argued), Joyce F. Nedde, Deputy Atty. Gen., Doris H. Maier, Asst. Atty. Gen., Herbert L. Ashby, Chief Asst. Atty. Gen., Evelle J. Younger, Atty. Gen., San Francisco, Cal., for respondents-appellees.

Before LUMBARD,* HUFSTEDLER and CHOY, Circuit Judges.

LUMBARD, Circuit Judge:

■ Alfred Walker appeals from an order of the District Court for the Northern District of California, entered July 6, 1971, denying his petition for a writ of habeas corpus. He questions the validity of his 1963 conviction in Alameda County for the possession for sale of marijuana on the ground that there was no probable cause for his arrest and the seizure of marijuana under the mattress of the bed on which he had been sleeping. We hold, as found by Judge Harris in the district court, that there was ample evidence before the Superior Court for Alameda County to show probable cause for Walker's arrest. In addition, we find that the lengthy proceedings in the federal courts commencing November 1965,[1] have failed to develop any evidence from which it may be argued that full and fair consideration was not given to petitioner's claim by the Alameda County Court. Accordingly, the petition was properly denied. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); 28 U.S.C. § 2254.

For the facts established at the 1963 state trial, it suffices to quote from the opinion of Presiding Judge Shoemaker of the California District Court of Appeal, First Appellate District, filed October 15, 1964:

"At approximately 12:30 p. m. on August 9, 1963, Edward Hilliard, an Oakland police officer attached to the Vice Control Section, received a telephone call from a female informant. The officer had known the informant, a special employee of the section, for two years. He considered her a reliable informant and testified that she had previously furnished him with information leading to the arrest and conviction of at least one person.

"On this occasion, the informant reported that she had met a man who had just come to Oakland from San Francisco and who had five bags of marijuana for sale. Although she did not know the man's name, she stated that he had taken Room 3 at the Dunbar Hotel, and that he intended to sell the marijuana as soon as possible and return to San Francisco.

"Upon receiving this information, Hilliard instructed the informant to meet him near the Dunbar Hotel. He and Officer Walker then proceeded to the agreed location, furnished the in-

---

* The Honorable J. Edward Lumbard, Senior Circuit Judge of the Court of Appeals for the Second Circuit, sitting by designation.

1. After filing his petition for habeas corpus, petitioner served written interrogatories upon the respondent warden. Although respondent argued that discovery was not available in habeas corpus cases, the district court held otherwise and ordered respondent to reply to the interrogatories. Thereupon respond-ent petitioned this court for a writ of mandamus forbidding enforcement of the district court's order, and this petition was granted. Wilson v. Harris, 378 F.2d 141 (9th Cir. 1967). The Supreme Court granted certiorari, vacated the writ, and remanded to this court for further proceedings. Harris v. Nelson, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969). This court then remanded the cause to the district court, whereupon respondent filed an answer to petitioner's interrogatories.

formant with a $20 bill, the serial number of which had been recorded, and instructed her to go to Room 3 of the hotel and attempt to make a purchase of marijuana from the person in question. No attempt to search the informant was made.

"The informant then drove to the hotel in her own car, with the officers following at a distance in another car. She entered the hotel and remained out of sight of the officers for approximately five minutes. Upon emerging from the hotel, she got into her car and drove to a prearranged spot, with the officers following. She then gave Hilliard a brown paper bag containing a vegetable substance which he took to be marijuana. The informant stated that she had purchased the bag from the man who was in bed in Room 3. She further stated that he had taken it from a larger bag which was under the mattress and which contained several other small bags. The officers did not search the informant to see if she still had the $20 bill in her possession.

"The officers then returned to the Dunbar Hotel, and Hilliard proceeded to Room 3 while Walker remained on the street where he could observe the window of said room. After Hilliard had knocked repeatedly on the door of the room without receiving any response, he went to the hotel manager's room to obtain a key. The manager then accompanied Hilliard and Walker to Room 3 and unlocked the door. Appellant was asleep in bed. Hilliard awakened him and identified himself as a police officer. Upon observing certain scars on the inside of appellant's elbows, Hilliard inquired as to their nature, and appellant replied that he had been using Percodan, a synthetic narcotic, for the last five days. Upon further questioning, he admitted that he had obtained the Percodan without a prescription. When asked whether he had Percodan or the equipment for injecting it in

the hotel room, appellant replied in the negative, stating that he had used it up. The officer then asked if he could look around the room, and appellant replied, 'Sure, go ahead and look. There is nothing here.'

"After placing appellant under arrest for the illegal use of narcotics, Hilliard lifted the mattress on the bed and recovered a brown paper bag which contained four small bags, three cigarettes, and a package of wheat straw papers. The cigarettes and the contents of the four small bags were subsequently analyzed and found to be marijuana. When Hilliard showed these items to appellant, he stated that he had discovered the large bag under the mattress when he rented the room. When asked what he intended to do with it, he replied that he wanted to sell it to make some money. Although appellant was searched by the officers, the $20 bill which had been given to the informant was never found."

At his trial, while Walker denied the sale of marijuana or any knowledge of the bag under the mattress, he admitted meeting the female informant, Frances Jenkins, on the morning of August 23, 1963, and offering her 50 cents to drive him to Oakland. He further testified that Miss Jenkins took him to the Dunbar Hotel where he secured a room, number 3, that she briefly accompanied him to that room, and that he was registered in the hotel under an assumed name.

██ ██ Petitioner's claim that there was no probable cause for his arrest and the search and seizure that followed centers largely on evidence developed during the discovery proceedings in the district court regarding the veracity of Frances Jenkins and the extent to which the Oakland police had found her reliable. While this evidence raised questions about how many times Jenkins had given information and how many convictions had resulted therefrom, there is ample evidence in the record to support the conclusions of the district judge that

Miss Jenkins "did furnish information to Sergeant Hilliard, as testified to by the latter, upon which at least 12 arrests were made and four convictions obtained." Therefore, Hilliard had a sufficient basis, in light of his past experience with information furnished by Jenkins, to believe that she was a reliable informer. This, in combination with the fact that the information related by Jenkins was based on her personal observations, was sufficient to conclude that Hilliard's actions taken in reliance on the information were based on probable cause. Aguilar v. Texas, 378 U.S. 108, 113–114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); see Whitely v. Warden, 401 U.S. 560, 566, 91 S.Ct. 1031, 28 L.Ed. 2d 306 (1971), and Spinelli v. United States, 393 U.S. 410, n. 5 at 417, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969). In any event, even if some question of Jenkins' reliability at the time she gave Hilliard the information could be raised, we are of the opinion that, when the officers gave Jenkins the $20 bill and she entered the hotel where petitioner was staying and emerged with marijuana claimed to have been purchased from petitioner, this was sufficient to verify her information. *See* Gabriel v. United States, 366 F.2d 726 (9th Cir. 1966). This is especially the case when viewed in light of the fact that petitioner was in the room stated by, and registered under the name specified by, the informant. *See* United States v. Jiminez-Badilla, 434 F.2d 170, 173 (9th Cir. 1970).

We find it unnecessary to deal with the argument of the Attorney General that Fourth Amendment issues cannot be raised on collateral attack. It should be noted, however, that this issue may be passed upon by the Supreme Court in Schneckloth v. Bustamonte wherein certiorari was granted on February 28, 1972, 405 U.S. 953, 92 S.Ct. 1168, 31 L.Ed.2d 230.

Affirmed.